IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:18CR401-7 |
| | ) | |
| | ) | |
| ELIAS JUNIOR RODRIGUEZ | ) | |

**MEMORANDUM ORDER**

This matter is before the Court on Defendant Elias Junior Rodriguez's second pro se Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) "Compassionate Release" Statute [Doc. #178]. Rodriguez's first motion was denied because there were no extraordinary and compelling reasons warranting a sentence reduction and, even if there were, the factors from 18 U.S.C. § 3553(a) counseled against relief. The bases for and circumstances underlying the instant motion are similar to those described in support of the first motion. Rodriguez is concerned about contracting COVID-19 while incarcerated at FCI Butner Medium II and the resulting risk associated with his medical conditions. For the reasons explained below, his motion is denied.

On June 21, 2019, Rodriguez was sentenced to 120 months' imprisonment for possessing methamphetamine with intent to distribute. "The court may not modify a term of imprisonment once it has been imposed except", as is relevant here, "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion

on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier". 18 U.S.C. § 3582(c)(1)(A).  Rodriguez requested compassionate release based on concerns about COVID-19 which the warden denied on August 18, 2020 and again on October 1, 2020.  Although it is not apparent when the warden received the request, it is clear that thirty days had lapsed since the warden's receipt when Rodriguez filed the instant motion.  Therefore, although Rodriguez seems to request that the Court waive this statutory requirement, he has appropriately exhausted his administrative remedies.

He must next meet his burden of showing that extraordinary and compelling reasons warrant relief, see 18 U.S.C. § 3582(c)(1)(A)(i), and this he has not done. See United States v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020) (finding "no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A)," "empower[ing]" courts "to consider any extraordinary and compelling reason for release that a defendant might raise") (citation omitted); U.S. Sentencing Guideline § 1B1.13, Application n.1 (providing circumstances found to be extraordinary and compelling) cited in McCoy, 981 F.3d at 282 n.7 (noting that § 1B1.13 "remains helpful guidance even when motions are filed by defendants"); Dep't of Justice, Fed. Bureau of Prisons, Program Statement 5050.50 (Jan. 17, 2019) (explaining circumstances supporting compassionate release).

2

Rodriguez contends that his severe obesity increases the risk of breathing problems were he to contract COVID-19. Although the Centers for Disease Control and Prevention ("CDC") recognize that obesity and severe obesity increase the risk of severe illness from the virus that causes COVID-19, see CDC, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated Feb. 3, 2021), the Court previously explained in response to Rodriguez's first motion that "there is no notation of his obesity and no evidence of Rodriguez's height and weight among the medical records", (Mem. Order at 3 [Doc. #170]). Furthermore, in his first motion, he claimed to be five feet six inches tall and weigh 202 pounds, but his June 2019 Presentence Report noted him to be five feet nine inches tall and weigh 160 pounds at the time which equates to a body mass index within the normal range. (Id.) In the instant motion, Rodriguez does not explain this discrepancy and even acknowledges that "[t]he Court is correct" that his medical records did not show him to be obese. He has provided two pages of additional medical records in support of the instant motion, but still neither evidences his obesity. However, as noted in the Court's earlier Order, Rodriguez's confirmed hypertension is among the conditions the CDC recognizes as possibly increasing the risk of severe illness from COVID-19. (Id.)

In addition, Rodriguez also claims that the spread of COVID-19 among inmates at Butner Medium II increases his stress level "causing his immune system to possibly fail at a time COVID-19 is most deadly with someone with his medical

3

conditions" and that releasing him would "serve the interest of providing him with the most effective medical care." While the fear of contracting COVID-19 is understandably stressful, Rodriguez has provided no documentary support that such increased stress would compromise his immune system and make him more susceptible to severe illness from COVID-19. And, other than the passing reference noted above, he has neither argued nor supported the assertion that he is not receiving necessary medical care.

He remains housed at FCI Butner Medium II and, admittedly, the reported history of COVID-19 has worsened since Rodriguez first moved for compassionate release in November 2020. He describes the facility as "a hotspot for the overall [Butner] complex" where social distancing is nearly impossible. As of February 8, 2021, ninety-two inmates and eight staff members are positive, two inmates have died, and 296 inmates and thirteen staff members have recovered. Bureau of Prisons ("BOP"), COVID-19 Coronavirus, https://www.bop.gov/coronavirus/. Rodriguez claims that he would be safer from the spread of COVID-19 were he released. As at Butner Medium II, the situation in Surry County, where he would presumably reside upon release, has worsened since his first motion such that it still cannot be determined that he would be better protected if released. See N.C. Dep't of Health & Human Servs., COVID-19 County Alert System, https://files.nc.gov/covid/documents/dashboard/COVID-19-County-Alert-System-Report.pdf (updated Feb. 4, 2021) (reporting Surry County's 14-day case rate per

4

100,000 to be 936.2, 14-day percent positive to be 13.5%, and "[c]ritical [c]ommunity [s]pread").

Moreover, the BOP has begun administering the COVID-19 vaccine to staff and inmates. On January 4, 2021, it published its updated COVID-19 Vaccine Guidance recommending that vaccinations first be offered to correctional staff "to decrease the possible introduction of SARS-CoV-2 into institutions and thus protect inmates" then offered to inmates according to priority levels. Federal Bureau of Prisons Clinical Guidance, COVID-19 Vaccine Guidance (Jan. 4, 2021 v.7.), available at https://www.bop.gov/resources/pdfs/2021_covid19_vaccine.pdf. On January 16, 2021, the BOP reported that "[t]he COVID-19 vaccine has been delivered to staff and inmates at more than half of the BOP's correctional facilities across the country" and "[b]ased on weekly allocations determined by the CDC and [Operation Warp Speed], all of the BOP's facilities are expected to receive their first dose by mid-February." BOP, COVID-19 Vaccination Efforts Commended (Jan. 16, 2021), https://www.bop.gov/resources/news/20210116_covid_vaccine_efforts_commended.jsp. As of January 15, 2021, the BOP had administered the first dose of the vaccine to 7,576 staff and 5,457 inmates, and both doses had been administered to 1,027 staff and 1,051 inmates. Id. As of February 8, over 40,000 doses have been administered across BOP facilities, including Butner Federal Correctional Complex where 575 staff and 485 inmates have been fully inoculated. https://www.bop.gov/coronavirus/.

5

In sum, there is no extraordinary and compelling reason to reduce Rodriguez's sentence. To the extent that his passing reference to his three minor children and purported employment upon release are offered in further support, they are not sufficient, alone or combined with the above, to meet his burden.

Even had he shown extraordinary and compelling reasons warranting relief, factors from 18 U.S.C. § 3553(a) strongly counsel against release. See 18 U.S.C. § 3582(c)(1)(A). As explained in the previous order addressing Rodriguez's first motion for compassionate release,

> Both the instant offense conduct, as well as Rodriguez's lengthy criminal history with numerous violations of probation, suggest that he is a danger to public safety and cannot be trusted to follow conditions of release. The offense conduct underlying Rodriguez's incarceration involved numerous individuals and the distribution of large quantities of methamphetamine over several years. Throughout this period, Rodriguez came into contact three times with law enforcement and was undeterred until he was arrested the final time and held in state or federal custody without release. In August 2016, after a traffic stop, a search of his residence revealed methamphetamine, marijuana, four firearms, and thousands of dollars in cash. He was arrested and released on bond in September 2017. In March 2018, Rodriguez was detained on the grounds of a middle school with methamphetamine, marijuana, drug paraphernalia, and nearly $700 in cash in his vehicle. In October 2018, he led law enforcement in a vehicle pursuit and was ultimately found with methamphetamine at which time he was arrested and has since been in custody. His criminal history is lengthy and involves six instances of violation, revocation, and/or termination of probation. Most recently, Rodriguez was on probation for a 2015 conviction for felony possession with intent to manufacture/sell/deliver a Schedule VI controlled substance when he committed the instant offense.

(Mem. Order at 4-5.) Rodriguez discounts this criminal conduct as having "occurred some years previously." And, he "argues that his condition a product of

6

his underlying medical issues from which he suffers does not lend itself to any assumption that he is capable of posing a threat of harm to others if he is released." However, as explained above, nothing before the Court suggests that Rodriguez's medical condition limits him, and it certainly did not during the commission of the instant offense conduct.

In his first motion, he claimed to have completed courses at FCI Butner, many of which are designed to lower his risk pattern score, maintained "clear conduct" the entire time, and served as a role model for other inmates. He has now submitted a copy of his August 20, 2020 Individualized Needs Plan – Program Review which, indeed, evidences his satisfactory facilities carpentry work in the BOP, lack of incident reports in the previous six months and "clear conduct", enrollment (and waitlist) to earn his GED, and continuous enrollment during incarceration in courses ranging from Planet Earth to Leadership to Financial Literacy to Poetry. It is also noted in the Comments section of his Program Review that he is "generally respectful toward staff and compliant w/ institution rules and regulations." Rodriguez appears to be investing his time in custody wisely. It is also encouraging that prior to his involvement in the instant offense, he was employed with modular home companies, work he described in his Presentence Report as enjoying. He also noted that he "like[s] to learn new things", which his coursework and employment in the BOP support. And, in his first motion, he also described his plans to participate in community-based programs such as anger

7

management and drug abuse treatment. Rodriguez also briefly mentions his three minor children.

Rodriguez's efforts during incarceration are important and will likely continue to serve him well while he is in custody and after he completes his term of imprisonment. However, at this time, they do not outweigh the fact that his underlying offense conduct and violations of probation reflect someone who is a danger to the community and cannot be relied upon to follow conditions of release.

Furthermore, it is not unusual for a defendant's family to bear the burden of incarceration. At the time of his presentence investigation, his children lived with their mother who was in a long-term relationship with Rodriguez. He was described as a "good father" and stated that he wanted "to give them what [he] didn't have growing up", "someone to talk to." However, their welfare did not deter his continued participation in the instant drug distribution offense.

For the reasons explained above, IT IS HEREBY ORDERED that Defendant Elias Junior Rodriguez's second pro se Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) "Compassionate Release" Statute [Doc. #178] is DENIED.

This the 8th day of February, 2021.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge